**Keith Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Tim DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
**Lydia Anderson-Dana,** OSB No. 166167
Email: landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:   (503) 227-6840

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WL-SKB JOHNS LANDING 5100 OWNER LLC, a Delaware Limited Liability Company, | Case No. 3:22-cv-1949 |
| Plaintiff, | **COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| INTEGRATED PROPERTY SERVICES COMPANY, a New Mexico Corporation, | |
| Defendant. | |

Plaintiff WL-SKB Johns Landing 5100 Owner LLC, by and through its undersigned counsel, allege the following:

**PARTIES**

1.Plaintiff WL-SKB Johns Landing 5100 Owner LLC ("Plaintiff" or "Seller") is a Delaware limited liability company, whose principal place of business is in Portland, Oregon, and whose sole member, WL-SKB Johns Landing Venture, LLC, is a Delaware limited liability company.  The members of WL-SKB Johns Landing Venture, LLC are SKB-Macadam Portfolio, LLC, an Oregon limited liability company, and Wacker Lake Johns Landing LLC, a

PAGE 1 -**COMPLAINT**

Delaware limited liability company. The members of SKB-Macadam Portfolio, LLC are ScanlanKemperBard Companies, LLC, an Oregon limited liability company, and individual or entity investors, none of whom are New Mexico citizens. The sole member of Wacker Lake Johns Landing LLC is WHIREP IV RB LLC, a Delaware limited liability company, the members of which are (i) WHI Real Estate Partners IV, L.P., (ii) WHI Real Estate Partners IV-B, L.P. and (iii) WHIREP IV RS LP, each a Delaware limited partnership. The sole member of WHIREP IV RS LP is WHIREP IV REIT Inc., a Maryland corporation, the shareholders of which are WHI Real Estate Partners IV-PF, L.P. and WHI Real Estate Partners IV-TE, L.P., each a Delaware limited partnership. The General Partner of WHI Real Estate Partners IV, L.P., WHI Real Estate Partners IV-B, L.P., WHI Real Estate Partners IV-PF, L.P. and WHI Real Estate Partners IV-TE, L.P. is WHIREP IV GP LLC, an Illinois limited liability company. The members of ScanlanKemperBard Companies, LLC are Todd M. Gooding, a citizen of Oregon; James Paul, a citizen of Oregon; Richard D. Morean, a citizen of Colorado; Patrick Terrell, a citizen of Oregon; Adam Haber, a citizen of New York; and John Olivier, a citizen of Oregon.

2. Defendant Integrated Property Services Company ("Defendant" or "Buyer") is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter based on diversity of citizenship, 28 U.S.C. § 1332, in that Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and the property that is the subject of the parties' agreements is located in this District.

PAGE 2 - **COMPLAINT**

5.  This Complaint has been filed in the Portland Division pursuant to Local Rule 3-2, because a substantial part of the events giving rise to the claims occurred in Multnomah County, Oregon and the property that is the subject of the parties' agreements is located in Multnomah County, Oregon.

## FACTUAL ALLEGATIONS

### The Parties' Agreements Regarding the Property

6.  This action arises out of Defendant's invalid attempt to terminate a purchase and sale agreement and unlawfully retain its earnest money that was nonrefundable except in very limited circumstances.  On September 6, 2022, Plaintiff and Defendant entered into a Real Estate Purchase and Sale Agreement (the "Purchase Agreement") in which Defendant agreed to purchase from Plaintiff the land and all buildings, fixtures, and other improvements situated thereon located at 5100 SW Macadam Avenue, Portland, Oregon (the "Property").

7.  Per the Purchase Agreement, Defendant initially agreed to purchase the Property for $24,000,000.  The initial closing date was October 12, 2022, and the parties agreed in Section 24(a) that time was of the essence under the Purchase Agreement.

8.  Pursuant to Section 24(q) of the Purchase Agreement, Plaintiff was contractually prohibited from marketing or selling the Property to any other parties until termination of the Purchase Agreement or the closing date.

9.  The Purchase Agreement required Defendant initially to deposit $100,000 in earnest money, and an additional $400,000 in earnest money at a later date.  In total, Defendant deposited $500,000 in earnest money (the "Earnest Money"), which, as of the date of the filing of this action, is in the custody of a third-party escrow agent, Ticor Title Insurance Company (the "Escrow Agent").

PAGE 3 **- COMPLAINT**

10. The parties agreed on September 12, 2022 to amend the Purchase Agreement (the "First Amendment") to extend the inspection period for Defendant and altered Defendant's right to extend the closing date.

11. On September 30, 2022, Defendant issued a notice of termination of the Purchase Agreement, but the parties then agreed on October 14, 2022 to reinstate the Purchase Agreement (the "Reinstatement and Second Amendment").

12. As part of the Reinstatement and Second Amendment, Plaintiff agreed to adjust the purchase price downward, to $23,000,000, and the closing date was changed to November 7, 2022. At that time, the Earnest Money became nonrefundable except in very limited circumstances.

13. On October 31, 2022, Defendant elected, pursuant to the Purchase Agreement, First Amendment, and Reinstatement and Second Amendment, to extend the Estoppel Delivery Date to November 8, 2022 (the "Estoppel Delivery Date") and the Closing Date to November 16, 2022 (the "Closing Date").

**Relevant Terms in the Purchase Agreement**

14. Section 6(d) of the Purchase Agreement required Plaintiff to obtain Tenant Estoppel Certificates and deliver them to Defendant no later than five business days prior to the Closing Date (the "Estoppel Delivery Date"). The Tenant Estoppel Certificates required tenants of the Property to verify certain factual matters concerning their leases, including, among other things, the amount of rent, pass-through expenses and the security deposit, the length of the lease term, and the existence of any defaults.

PAGE 4 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

15. Specifically, Plaintiff was required to deliver to Defendant Tenant Estoppel Certificates from tenants who, in the aggregate, occupy at least eighty percent (80%) of the aggregate occupied rentable space at the Property (the "Estoppel Minimum").

16. Under Section 6(d), Defendant had two business days after receiving any Tenant Estoppel Certificates to approve or disapprove a Certificate that: (1) was "not substantially in the form attached hereto as Exhibit J as may have been modified by Buyer during the Inspection Period (or in the form required under its Lease)"; (2) omitted or reflected "any material modification of any Lease provision"; or (3) "raise[d] any material issue or conflicts in any material respect with the information on the Rent Roll and Leases approved by Buyer during the Inspection Period." The failure to timely disapprove of any Certificates constituted approval under Section 6(d).

17. However, if Defendant did timely disapprove of a Tenant Estoppel Certificate, Section 6(d) provides that "Seller shall have the right, but not the obligation, to attempt to obtain from any Tenant that has delivered a disapproved Tenant Estoppel Certificate a second Tenant Estoppel Certificate correcting or revising the item(s) that caused Buyer's disapproval of the same, in which case Seller shall deliver such re-issued Tenant Estoppel Certificate to Buyer for its review and approval as set forth above in this Section 6(d)."

18. If Plaintiff failed to deliver the Estoppel Minimum by the Estoppel Delivery Date, each party had the right under Section 6(d) to extend the Estoppel Delivery Date for up to ten days, provided that the party seeking an extension delivered written notice to the other party by 5:00 P.M. Pacific time on the Estoppel Delivery Date.

19. Any failure of Plaintiff to deliver the Estoppel Minimum by the Estoppel Delivery Date did not constitute default by Plaintiff under the Purchase Agreement. Defendant's sole

PAGE 5 - **COMPLAINT**

remedies in such an event were "either to (i) extend the Closing Date as provided below, (ii) terminate this Agreement, in which case the Earnest Money will be returned to Buyer, or (iii) to waive the requirement for such estoppel letters (to the extent not provided) and proceed with Closing."

20. Under Section 12(d) of the Purchase Agreement, Defendant was required to deliver to the Escrow Agent certain documents and the "the Purchase Price, less the Earnest Money, and plus or minus prorations, credits and adjustments as provided herein." The failure to do so constituted default under the Purchase Agreement

21. In the case of Defendant's default, Section 17(b) applies, which provides, in part, that Plaintiff was entitled to the Earnest Money as liquidated damages:

> <u>Pre-Closing Default by Buyer</u>. If Buyer defaults hereunder upon or prior to Closing and fails to cure such default within three (3) business days of written notice of such default, this Agreement will terminate and the Earnest Money will be disbursed and paid to Seller (which shall be released by Escrow Agent only after having received written release instructions from both Buyer and Seller or court order) as Seller's sole and exclusive remedy at law and in equity, in full settlement of all claims against Buyer (with the exception of claims against Buyer related to obligations that are expressly intended to survive the termination of this Agreement). Notwithstanding the foregoing, Buyer shall not be entitled to cure Buyer's failure to timely deliver any funds to be delivered by Buyer hereunder, provided that, Buyer shall be entitled to a one (1) business day cure period for Buyer's failure to timely deliver any funds to be delivered by Buyer hereunder if such failure is caused by circumstances beyond Buyer's reasonable control. **The parties agree that the amount of actual damages that Seller would suffer as a result of Buyer's default would be extremely difficult to determine and have agreed, after specific negotiation, that the amount of the Earnest Money is a reasonable estimate of the Seller's damages and the net detriment that Seller would suffer from a default by Buyer and is intended to constitute a fixed amount of liquidated damages in lieu of other remedies available to Seller and is not intended to constitute a penalty.**

22. In the event legal action is filed "to interpret, enforce, or rescind [the Purchase] Agreement or otherwise arising out of or concerning [the Purchase] Agreement," Section 24(h) provides that the prevailing party is entitled to recover from the other party reasonable attorney fees and costs.

PAGE 6 - **COMPLAINT**

**Facts Surrounding Plaintiff's Collection and Delivery of Tenant Estoppel Certificates**

23.   To meet the Estoppel Minimum, Plaintiff needed to deliver, by November 8, 2022 at 5:00 P.M., Tenant Estoppel Certificates from tenants who occupied at least 80% of the leased/occupied square footage of the Property (the "Estoppel Delivery Date deadline").  75,357 square feet of the Property were leased/occupied at all relevant times, so Plaintiff needed to collect and deliver Tenant Estoppel Certificates from tenants occupying 60,286 square feet of the Property to meet the Estoppel Minimum.

24.   As part of Plaintiff's good faith effort to collect and deliver Tenant Estoppel Certificates to Defendant, Plaintiff sent all drafts of the Certificates to Defendant ahead of time and addressed all comments Defendant sent back prior to sending to the tenants.  This was not required under the Purchase Agreement.

25.   Plaintiff sent the Tenant Estoppel Certificates to all thirteen tenants of the Property on October 17, 2022.  Plaintiff worked in earnest to collect all of the estoppels, including those with changes requested by Defendant.  Plaintiff eventually delivered a signed Tenant Estoppel Certificate from each tenant and a related estoppel tracker worksheet to Defendant for review, as each was collected.

26.   Even though Defendant had already approved the completed forms of Tenant Estoppel Certificates, Defendant asked for clarification or edits to a few Tenant Estoppel Certificates after tenants had signed.  Most of those went smoothly, with revised versions being signed.  However, there were issues with three Tenant Estoppel Certificates.

27.   For Tenant #1, which leased 14,388 square feet or 19% of the occupied space of the property, Plaintiff delivered the Tenant Estoppel Certificate to Defendant on November 1, 2022.  Defendant requested certain changes to the Tenant Estoppel Certificate, which Plaintiff was able to obtain and then delivered a signed version to Defendant on November 4, 2022 at 1:05 P.M. Pacific Time.  When Plaintiff had not heard from Defendant, Plaintiff's broker reached out to Defendant on November 7, 2022 in the morning to ask about the outstanding

PAGE 7 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Tenant Estoppel Certificates, and Defendant responded that afternoon that they would formally respond soon. However, at 1:05 P.M. on November 8, 2022, Defendant had not received comments or a rejection of this Tenant Estoppel Certificate, and therefore it was deemed accepted under the Purchase Agreement.

28. Defendant did not request additional changes to the Tenant Estoppel Certificate from Tenant #1 until 4:50 P.M on November 8, 2022, more than two business days later and only ten minutes before the Estoppel Delivery Date deadline. All of the changes requested by Defendant at this late date could have been requested when Plaintiff sent a draft version of the Estoppel Certificate for Tenant #1 to Plaintiff, and again when Defendant requested changes on November 1, 2022.

29. It was impossible for Plaintiff to obtain and deliver a revised Tenant Estoppel Certificate from Tenant #1 in the ten minutes remaining before the Estoppel Delivery Date deadline, but Plaintiff did obtain a revised Tenant Estoppel Certificate from Tenant #1 on November 9, 2022, which it delivered to Defendant.

30. For Tenant #2, which leased 5,288 square feet or 7% of the occupied space of the property, Plaintiff delivered the Tenant Estoppel Certificate to Defendant on October 20, 2022. Defendant requested additional changes more than two business days later, on October 31, 2022. Plaintiff had no obligation under the Purchase Agreement to make any changes because Defendant requested these changes more than two business days after receiving the Tenant Estoppel Certificate. However, after Defendant attempted to terminate the Purchase Agreement, Plaintiff did obtain and deliver a revised Tenant Estoppel Certificate from Tenant #2 on November 9, 2022.

31. For Tenant #3, which leased 7,536 square feet or 10% of the occupied space of the property, Plaintiff did not receive a signed Tenant Estoppel Certificate until November 11, 2022. Plaintiff promptly delivered the Certificate on the same day to Defendant. At this time, Plaintiff had delivered 100% of the signed Tenant Estoppel Certificates to Defendant.

PAGE 8 - **COMPLAINT**

32. On November 8, 2022, Plaintiff shared with Defendant the estoppel tracker worksheet indicating that 83% of signed estoppels had been collected. Defendant at no time, prior to its email at 4:50 P.M. on November 8, 2022, indicated that it disagreed with the estoppel tracker worksheet.

33. Because Defendant did not indicate its disagreement with the estoppel tracker worksheet by 1:05 P.M. on November 8, 2022, Plaintiff understood, under the terms of the Purchase Agreement that Plaintiff had met the 80% Estoppel Minimum and therefore had no reason to send an estoppel deadline extension notice.

### Defendant's Attempted Termination Notice and Subsequent Communications

34. During the time that Plaintiff was diligently working in good faith to collect the Tenant Estoppel Certificates and prepare for closing, on information and belief, Defendant was not acting quickly to finalize the loan documents that were necessary to close on time.

35. At 5:22 P.M. on November 8, 2022, only 32 minutes after belatedly requesting changes to the Tenant Estoppel Certificate for Tenant #1 and only 22 minutes after the Estoppel Delivery Date deadline, Defendant attempted to terminate the Purchase Agreement via emailed letter to Plaintiff (the "Attempted Termination Notice").

36. On November 9, 2022, Plaintiff responded to the Attempted Termination Notice via emailed letter, explaining that it was invalid because Plaintiff had met the 80% Estoppel Minimum and that the Purchase Agreement remained in full force and effect. Defendant also noted it would continue to work to resolve any outstanding comments on Tenant Estoppel Certificates, in the spirit of good faith and to work towards closing. In that letter, Plaintiff pointed out that it had determined that Plaintiff had actually provided Defendant with 90% of the required signed estoppel minimums prior to the Estoppel Delivery Date deadline.

37. On November 10, 2022, Defendant responded to Plaintiff's response letter, arguing that Plaintiff had not delivered revised Tenant Estoppel Certificates from Tenants #1 and #2 on time, and that the Tenant Estoppel Certificate from Tenant #3 had not been delivered.

PAGE 9 - **COMPLAINT**

38. On November 10, 2022, Plaintiff responded, again denying that the Attempted Termination Notice was valid and notifying Defendant that Plaintiff intended to file suit against Defendant pursuant to Section 17(b) and Section 24(h) if Defendant did not close on the Closing Date.

39. On November 16, 2022, the Closing Date, Plaintiff sent the closing notice to Defendant, indicating that Plaintiff was still ready and willing to close in accordance with the Purchase Agreement.

40. Also on November 16, 2022, Defendant's principal, Scott Goodman, sent an email to Plaintiff's broker acknowledging it was the Closing Date and demanding a further price reduction, stating "Today is closing. Without the Seller sending us a signed amendment extending closing and providing a price reduction, the deal is over.  No point of incurring more lender costs until we know what's happening."  In this email, Mr. Goodman did not mention the Tenant Estoppel Certificates.

41. Defendant failed to provide the Escrow Agent with the required documents or Purchase Price on the Closing Date, as required by Section 12(d) of the Purchase Agreement.

42. On November 17, 2022, Plaintiff sent a default notice to Defendant, noting that Defendant had defaulted under Section 12(d) and demanding that Defendant agree to disbursement of the Earnest Money to Plaintiff, as required by Section 17(b) of the Purchase Agreement.  As requested by Plaintiff, the Escrow Agent then sent release instructions for the parties to sign.

43. Defendant did not sign the release instructions.  Instead, on November 18, 2022, Defendant unilaterally sent a notice to the Escrow Agent demanding that the Earnest Money be returned to Defendant.

44. Due to these conflicting instructions, the Escrow Agent did not release the Earnest Money to either party and will only release the Earnest Money if the parties send consistent instructions or a court orders the release.

PAGE 10 **- COMPLAINT**

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment Under 28 U.S.C. § 2201)

45. Plaintiff realleges the allegations set forth in paragraphs 1 through 44 above and incorporates them herein by reference.

46. There is an actual and justiciable controversy between Plaintiff and Defendant as to whether, under the Purchase Agreement, Plaintiff had met the Estoppel Minimum as of the Estoppel Delivery Date and whether Defendant's subsequent Attempted Termination Notice was valid.

47. There is an actual and justiciable controversy between Plaintiff and Defendant as to Plaintiff's right to retain the Earnest Money at issue as a result of Defendant's failure to provide the Escrow Agent with the required documents or Purchase Price on the Closing Date, as required by Section 12(d) of the Purchase Agreement.

48. Pursuant to 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgment from the Court that: (1) Plaintiff met the Estoppel Minimum as of the Estoppel Delivery Date and Defendant's subsequent Attempted Termination Notice was invalid under the Purchase Agreement; (2) Defendant subsequently defaulted under Section 12(d) by failing to provide the Escrow Agent with the required documents or Purchase Price on the Closing Date; and (3) Plaintiff is entitled to retain the Earnest Money (and all interest earned thereon) deposited by Defendant with the Escrow Agent.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

49. Plaintiff realleges the allegations set forth in paragraphs 1 through 44 above and incorporates them herein by reference.

50. The Purchase Agreement, First Amendment, and Reinstatement and Second Amendment constitute a binding contract between Plaintiff and Defendant.

PAGE 11 - COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

51. Plaintiff fully performed under the Purchase Agreement, First Amendment, and Reinstatement and Second Amendment.

52. Defendant breached the Purchase Agreement, First Amendment, and Reinstatement and Second Amendment by:

   a. Sending requested changes to the Tenant Estoppel Certificates for Tenants #1 and #2 more than two business days after receipt and thereby attempting to terminate the Purchase Agreement invalidly.

   b. Effectively refusing to allow Plaintiff to exercise its right under Section 6(d) to attempt to obtain a revised Tenant Estoppel Certificate from Tenant #1, by requesting additional changes to Tenant #1's Tenant Estoppel Certificate 10 minutes prior to the Estoppel Delivery Date deadline, even though Defendant had numerous opportunities to request those changes at any time prior to the Estoppel Delivery Date.

   c. Effectively refusing to allow Plaintiff to exercise its right under Section 6(d) to extend the Estoppel Delivery Date for up to fifteen days.

   d. Failing to provide the Escrow Agent with the required documents or Purchase Price on the Closing Date and thereby defaulting under Section 12(d).

53. Plaintiff has been damaged by Defendant's breaches of contract, in the amount of the Earnest Money, or $500,000. Under Section 17(b), the amount of the Earnest Money is a reasonable estimate of Plaintiff's damages and constitutes liquidated damages.

54. Plaintiff is entitled to an award of attorneys' fees and costs incurred herein, pursuant to Section 24(h) of the Purchase Agreement.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## THIRD CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing)

55. Plaintiff realleges the allegations set forth in paragraphs 1 through 44 above and incorporates them herein by reference.

56. The implied covenant of good faith and fair dealing is incorporated by law into the Purchase Agreement, First Amendment, and Reinstatement and Second Amendment. The implied covenant of good faith and fair dealing requires Defendant to exercise good faith and fair dealing in connection with its performance under Sections 6(d) and 12(d), by following the express terms of those provisions.

57. Based on the terms of Section 6(d), Plaintiff had an objectively reasonable expectation that Defendant would: (1) send requested changes to the Tenant Estoppel Certificates for Tenants #1 and #2 within the time frame allowed by Section 6(d); (2) allow Plaintiff to exercise its right under Section 6(d) to attempt to obtain a revised Tenant Estoppel Certificate from Tenant #1, rather than requesting belated changes 10 minutes prior to the Estoppel Delivery Date deadline; (3) not request changes 10 minutes prior to the Estoppel Delivery Date deadline that could have been requested when Plaintiff sent a draft version of the Estoppel Certificate for Tenant #1 to Plaintiff, and again when Defendant requested changes on November 1, 2022; (4) allow Plaintiff to exercise its right to extend the Estoppel Delivery Date for up to fifteen days, rather than attempting to invalidly terminate the Purchase Agreement 32 minutes after sending Defendant's latest requested changes; (5) not attempt to invalidly terminate the Purchase Agreement

58. Based on the terms of Section 12(d), Plaintiff had an objectively reasonable expectation that Defendant would: (1) diligently work towards closing, rather than acting quickly

PAGE 13 **- COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

to finalize the loan documents that were necessary to close on time, and (2) provide the Escrow Agent with the required documents or Purchase Price on the Closing Date and thereby defaulting, rather than sending an email via its principal on the Closing Date that did not reference the Estoppel Minimum and instead demanded yet another price reduction from Plaintiff.

59.     Defendant breached the covenant of good faith and fair dealing: by (a) failing to send requested changes to the Tenant Estoppel Certificates for Tenants #1 and #2 within the time frame allowed by Section 6(d); (2) effectively refusing to allow Plaintiff to exercise its right under Section 6(d) to attempt to obtain a revised Tenant Estoppel Certificate from Tenant #1, rather than requesting belated changes 10 minutes prior to the Estoppel Delivery Date deadline; (3) requesting changes 10 minutes prior to the Estoppel Delivery Date deadline that could have been requested when Plaintiff sent a draft version of the Estoppel Certificate for Tenant #1 to Plaintiff, and again when Defendant requested changes on November 1, 2022; (4) effectively refusing to allow Plaintiff to exercise its right to extend the Estoppel Delivery Date for up to fifteen days, rather than attempting to invalidly terminate the Purchase Agreement 32 minutes after sending Defendant's latest requested changes; (5) attempting to invalidly terminate the Purchase Agreement; (6) failing to diligently work towards closing, even after Plaintiff provided a $1,000,000 price reduction to the Defendant and spent considerable time answering Defendant's questions and always promptly responding to Defendant's requests for more information; (7) sending an email via its principal on the Closing Date that did not reference the Estoppel Minimum, indicating that Defendant was not actually concerned about the Estoppel Minimum, and instead demanded yet another price reduction from Plaintiff; and (8) failing to

PAGE 14 - **COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

provide the Escrow Agent with the required documents or Purchase Price on the Closing Date and thereby defaulting.

60. Under Section 17(b), Plaintiff is entitled to the Earnest Money, or $500,000. The amount of the Earnest Money is a reasonable estimate of Plaintiff's damages and constitutes liquidated damages.

61. Plaintiff is entitled to an award of attorneys' fees and costs incurred herein, pursuant to Section 24(h) of the Purchase Agreement.

## JURY DEMAND

Plaintiff demands a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. On its First Claim for Relief, a declaratory judgment that: (1) Plaintiff met the Estoppel Minimum as of the Estoppel Delivery Date deadline and Defendant's subsequent Attempted Termination Notice was invalid under the Purchase Agreement; (2) Defendant subsequently defaulted under Section 12(d) by failing to provide the Escrow Agent with the required documents or Purchase Price on the Closing Date; and (3) Plaintiff is entitled to retain the Earnest Money (and all interest earned thereon) deposited by Defendant with the Escrow Agent.

B. On its Second Claim for Relief, the Earnest Money, or $500,000.

C. On its Third Claim for Relief, the Earnest Money, or $500,000.

D. An award of all attorneys' fees, costs, and expenses incurred by Plaintiff in bringing this action; and

E. Such further relief as the Court deems just and proper.

PAGE 15 - **COMPLAINT**

DATED this 16th day of December, 2022.

                STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

                By: s/ Lydia Anderson-Dana
                    **Keith Ketterling,** OSB No. 913368
                    **Tim DeJong,** OSB No. 940662
                    **Lydia Anderson-Dana,** OSB No. 166167

                209 SW Oak Street, Suite 500
                Portland, OR 97204
                Telephone: (503) 227-1600
                Email:    kketterling@stollberne.com
                             tdejong@stollberne.com
                             landersondana@stollberne.com

PAGE 16 **- COMPLAINT**